## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Pioneer Plastics, Inc.,

    Plaintiff,

v.

J & J Solutions, Inc., *doing business as*
Corvida Medical,

    Defendant and Third-Party Plaintiff,

v.

Muzammil Hussain,

    Third-Party Defendant.

Civ. No. 18-753 (MJD/BRT)

**REPORT AND
RECOMMENDATION**

Evan Weiner, Esq., and John R. Neve, Esq., Neve Webb, PLLC, counsel for Plaintiff.

Andrew B. Brantingham, Esq., Daniel Falknor, Esq., and Vernle C. Durocher, Jr., counsel for Defendant.

BECKY R. THORSON, United States Magistrate Judge.

This matter is before the Court on Plaintiff's and Third-Party Defendant's Motion to Remand or, Alternatively, to Dismiss Counts VI and VII of Defendant's Counterclaim and Third-Party Complaint (Doc. No. 10).[1] Plaintiff and Third-Party Defendant argue

---

[1] Plaintiff and Third-Party Defendant originally requested, in the alternative, that if the Court denied the motion to remand, the Court dismiss Counts VI and VII of the Defendant's Counterclaim and Third-Party Complaint. (Doc. No. 10.) In their Reply Brief, however, Plaintiff and Third-Party Defendant stated that Defendant's "filing of an Amended Counterclaim and Third-Party Complaint renders moot [their] Motion to

(Footnote Continued on Next Page)

that diversity jurisdiction is lacking, and therefore this case must be remanded to Hennepin County District Court. Defendant disagrees. For the reasons stated below, this Court recommends that Plaintiff's and Third-Party Defendant's motion to remand be denied.

## BACKGROUND

On March 13, 2018, Plaintiff Pioneer Plastics, Inc. ("Pioneer") commenced this action against J & J Solutions, Inc.[2] ("Corvida"), in Hennepin County District Court, in Minnesota, by serving the Summons and Complaint.[3] (Doc. No. 1, Attach. 1, Compl.) Pioneer alleges that Corvida failed to pay Pioneer for work that Pioneer completed on Corvida's behalf. (*Id.*) On March 19, 2018, Corvida removed the action to this Court on

---

(Footnote Continued from Previous Page)
Dismiss Counts VI and VII of the original Counterclaim and Third-Party Complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6)." (Doc. No. 33, Pl.'s and Third-Party Def.'s Reply 1, n.1.) This Court agrees and therefore recommends that Plaintiff's and Third-Party Defendant's motion to dismiss be denied as moot. Thus, the only contested portion of the pending motion remaining is the motion to remand.

[2]   J & J Solutions, Inc. is doing business as Corvida Medical.

[3]   "The jurisdiction of a federal court under 28 U.S.C. § 1332(a) depends on the citizenship of the parties at the time the action is commenced." *Chavez-Lavagnino v. Motivation Educ. Training*, 714 F.3d 1055, 1056 (8th Cir. 2013) (citing *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570–71 (2004)). The definition of when an action is "commenced" is dependent on state law. *See Winkels v. George A. Hormel & Co.*, 874 F.2d 567, 570 (8th Cir. 1989) ("A federal court must honor state court rules governing commencement of civil actions when an action is first brought in state court and then removed to federal court . . . .") Under Minnesota law, "a civil action is commenced against each defendant" when "the summons is served upon that defendant." Minn. R. Civ. P. 3.01(a).

the basis of diversity jurisdiction. (*Id.*) That same day, Corvida filed an Answer, Counterclaim (against Pioneer), and Third-Party Complaint (against Muzammil Hussain ("Hussain")). (Doc. No. 2.)

On April 9, 2018, Pioneer and Hussain filed a Motion to Remand, arguing that diversity of citizenship between the parties did not exist. (Doc. No. 10.) In particular, Plaintiff and Hussain assert that Pioneer is a Minnesota corporation with its principal place of business in Minnesota, Hussain is a citizen and resident of Minnesota, and although Corvida is an Iowa corporation, its principal place of business is also in Minnesota. (Doc. No. 1, Attach. 1, Compl. ¶¶ 1–2; Doc. No. 24, Pl.'s and Third-Party Def.'s Answer ¶ 3; Doc. No. 12, Mem. of Law in Supp. ("Pl.'s Mem.") 1.) Corvida disagrees and asserts that its principal place of business is in Iowa, not Minnesota. (Doc. No. 2, Answer ¶ 2.) After the parties fully briefed the motion, the undersigned held a hearing on June 16, 2018. (Doc. No. 39.)

## DISCUSSION

"A defendant may remove a state law claim to federal court only if the action originally could have been filed there." *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 619 (8th Cir. 2010). Diversity jurisdiction requires an amount in controversy greater than $75,000 and complete diversity of citizenship among the litigants. 28 U.S.C § 1332(a). "Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship." *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007).

For purposes of citizenship of corporations under the federal diversity jurisdiction statute, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The phrase "principal place of business" refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). This location is referred to as the "nerve center" of the corporation. *Id.* at 93. The nerve center "should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination[.]" *Id.* The Supreme Court has recognized that hard cases will arise under the "nerve center" test, especially in the "era of telecommuting" and in cases where business activities visible to the public transpire in a different state than where the top officers direct those activities. *Id.* at 95–96. The party asserting diversity jurisdiction has the burden of persuasion. *Id.* at 96. And when a party challenges allegations of jurisdictional facts, the parties must support their allegations with competent proof. *Id.* at 96–97.

Here, Corvida asserts that its principal place of business (i.e., the nerve center) is in Coralville, Iowa, satisfying diversity jurisdiction. (Doc. No. 2, Counterclaim and Third-Party Complaint ¶ 1.) Pioneer and Hussain, on the other hand, argue that while Corvida is incorporated in Iowa,[4] its principal place of business is in St. Louis Park,

---

[4] Pioneer and Hussain acknowledge that (1) Corvida is organized under the laws of the State of Iowa; (2) Corvida's registered agent with the Iowa Secretary of State is William McCartan, an attorney with an Iowa law firm; (3) the Iowa Secretary of State
(Footnote Continued on Next Page)

Minnesota, where its registered office address is with the Minnesota Secretary of State.[5]

In support of Corvida's assertion that its nerve center is in Coralville, Iowa, Corvida has presented evidence, through the Declaration of Mitch Moeller, Corvida's President and Chief Executive Officer,[6] that it has an office located at a certain address on Crosspark Road, in the University of Iowa's Technology Innovation Center, and that as part of Corvita's lease for the office, it is granted access to a main conference room in the University's Bioventures Center (i.e., referred to together as the "Crosspark facilities"). (Doc. No. 28, Decl. of Mitch S. Moeller ("Moeller Decl.") ¶¶ 4, 6.) Moeller declares, under penalty of perjury, that Corvida uses the main conference room to hold its in-person board, executive team, and shareholder meetings. (*Id.*) Moeller also explains that Corvida has "few employees and limited physical operations," and that its "executive

---

(Footnote Continued from Previous Page)
lists Corvida's home office address as the Crosspark facilities address in Coralville, Iowa. (Doc. No. 12, Pl.'s Mem. 2–3; *see also* Doc. No. 14, Decl. of Evan H. Weiner ("Weiner Decl.") ¶¶ 2–3, Ex. A.)

[5]    Pioneer and Hussain assert that during the time that Pioneer worked as the contract manufacturer for Corvida, Corvida maintained its primary offices at Pioneer's manufacturing facilities in Eagan, Minnesota. (Doc. No. 12, Pl.'s Mem. 6.) Although not altogether clear from their brief, because the working relationship between Pioneer and Corvida had seized by the time of the removal, it does not appear that they are maintaining that Corvida's principal place of business is in Eagan, Minnesota, but rather are asserting the principal place of business is in St. Louis Park, Minnesota.

[6]    Courts have relied on sworn statements in the "nerve center" analysis. *See McGill v. Conwed Corp.*, No. 17-01047 (SRN/HB), 2017 WL 4534827, at *5–*6 (D. Minn. Oct. 10, 2017) (finding the sworn declaration from the company president and the documents adequately supported the company's burden of establishing the location of its principal place of business).

officers reside in various states." (*Id.* ¶¶ 5–6.) He avers, however, that its executive officers "coordinate the corporation's activities from and through the Crosspark Road facilities," which "is the place where the corporation maintains its headquarters, and is the actual center of direction, control, and coordination."[7] (*Id.* ¶ 6.) According to Moeller, "[n]early all in-person meetings of Corvida's Board of Directors have occurred at the Crosspark Road headquarters,"[8] which are typically twice per year, and at these meetings, "Corvida's Board and executive officers make and implement critical decisions about management and operation of the company."[9] (*Id.* ¶ 7.) "None of the meetings of Corvida's Board of Directors have taken place in Minnesota." (*Id.*) Meetings of the Corvida management team have taken place at many locations around the country, including California, Illinois, and Minnesota, however "[t]he majority of the meetings have taken place in Iowa." (*Id.* ¶ 8.) And "[a]ll of Corvida's shareholder meetings have taken place at the Crosspark Road facilities." (*Id.* ¶ 9.) Furthermore, Corvida's

---

[7]   Corvida also submitted a copy of its website stating that the company is "Headquartered in the greater Iowa City area." (*Id.* ¶ 20, Ex. 2.)

[8]   Corvida submitted copies of its Minutes of the Meeting of the Board of Directors, with the location of the meeting and participants identified. (*Id.* ¶ 21, Ex. 3.)

[9]   Corvida's corporate officers are spread throughout the country: (1) the Chief Technology Officer and Executive Vice President resides in Iowa; (2) the Chief Executive Officer resides in California; (3) the Chief Operating Officer resides in Minnesota; (4) the former Chief Financial Officer resided in Illinois, but maintained an apartment in Iowa; and (5) the current Chief Financial Officer resides in Massachusetts. (*Id.* ¶¶ 11–12.) "In addition to these officers, Corvida has one employee in Iowa, one employee in Detroit, one employee in Boston, and three employees in Minnesota." (*Id.* ¶ 13.) No current board member resides in Minnesota. (*Id.* ¶ 14.)

operational services, including "Corvida's bank, accounting firm, and primary legal counsel are all located in Iowa"; "Corvida's corporate record books are located at the offices of its primary outside legal counsel, in Iowa"; and "Corvida's backup server for its computer network is located in Iowa." (*Id.* ¶ 10.) In addition, Corvida's address for IRS communications, SEC filings, and U.S. Government Small Business Innovation Research grants is the Crosspark Road address. (*Id.* ¶ 17.)

Pioneer and Hussain contend that Corvida's principal place of business is in Minnesota. They point to four things to support their argument: (1) Corvida's registered office address with the Minnesota Secretary of State is located in St. Louis Park, Minnesota, and is the address for an executive office suite complex, which is a place more "suitable" for a "nerve center" than a University Campus in Iowa; (2) Corvida's Board of Directors Meeting Minutes show that, out of approximately thirty-nine Board meetings from 2012 through 2017, nineteen took place by telephone conference, eighteen took place at the University of Iowa Bioventures Center, and only two took place in person at the corporation's office; (3) Anita Hussain, an employee of Pioneer, states that when she met with John Slump, co-founder and CFO of Corvida, he stated that Corvida's headquarters located in Iowa is just an empty office and no significant business by Corvida is transacted through that office; and (4) during the time that Pioneer worked as the contract manufacturer for Corvida, Pioneer had no contact with Corvida's offices in Iowa and Corvida maintained its primary offices at Pioneer's manufacturing facilities in Eagan, Minnesota, and during the time after Corvida and Pioneer's relationship ended in

2017, Corvida has maintained a presence and primary offices in Minnesota.

This Court finds Pioneer and Hussain's first point unpersuasive, as either location could serve as a "nerve center" for a corporation. As to their second point, this information actually supports finding that the nerve center was in Coralville, Iowa. The Bioventures Center is part of the Crosspark facilities. Therefore, all of the Board meetings were conducted either by phone or at the Crosspark facilities in Coralville, Iowa. None of the Board meetings took place in Minnesota.

As to their third point (i.e., the Anita Hussain assertion), Corvida has presented evidence rebutting this contention. In a declaration, John Slump, former Chief Financial Officer of Corvida, states the he did not tell Hussain that "Corvida's headquarters located [in] Iowa is just an empty office and no significant business by Corvida is transacted through the office." (Doc. No. 27, Decl. of John Slump ¶ 3.) And, as referenced above, Corvida's President and Chief Executive Officer, Mitch Moeller, testified about factual information that supports finding the nerve center in Coralville, Iowa. (*See* Doc. No. 28, Moeller Decl.)

Regarding Pioneer and Hussain's final point that focuses on Pioneer's experience with Corvida during their working relationship, (1) it is not Pioneer's contact with Corvida or the quantity of business that Corvida does within a certain state that determines where Corvida's nerve center is – instead, the nerve center is the place where Corvida controls its business; (2) the offices that Corvida had in Eagan in 2017 is not relevant to the determination of Corvida's principal place of business in March 2018

when this action was filed[10]; and (3) "maintaining a presence" in Minnesota does not show one way or the other where Corvida's nerve center is. *See Hertz*, 559 U.S. at 96 ("For example, if the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the 'principal place of business' is New York.").

This Court concludes that the nerve center of Corvida, for the purpose of diversity jurisdiction in this case, is located in Coralville, Iowa, the "place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Id.* at 80. Corvida is an early stage company that maintains limited physical operations. Consistent with that business model, Corvida's executive team resides and conducts business activities all across the United States. The *Hertz* Court noted the possibility of telecommuting, in which "corporations may divide their command and coordinating functions among officers who work at several different locations, perhaps communicating over the Internet." *Id.* at 95–96. In circumstances such as these, courts are to look in a "single direction, toward the center of overall direction, control, and coordination. *Id.* at 96.

Here, although some officers are located in other areas, and there appears to be a business presence in Minnesota, if there is a locus where their executive actions and

---

[10] Moeller explains that "Corvida opened an office in Minnesota to be near Pioneer's manufacturing facility in Minnesota." (Moeller Decl.¶ 18.) When doing so, Corvida obtained a "Foreign Corporation Certificate of Authority to Transact Business in Minnesota," which it submitted as an Exhibit to support its position in opposition to Pioneer's and Hussain's motion to remand. (*Id.* ¶ 19, Ex. 1.)

operation of the company are coordinated, the evidence indicates that it is through the Crosspark facilities in Iowa. That is where nearly all in-person meetings of Corvida's Board of Directors and formal in-person meetings of Corvida's executive officers have occurred. And the evidence reflects that at these in-person meetings, the officers and directors make critical decisions regarding the company's activities. (Moeller Decl. ¶ 7.) Further, Corvida's documents and public filings use the Crosspark address, Corvida stores its corporate record books at its outside legal counsel's office in Iowa, and Corvida procures most of its essential services for operating the company, such as banking, accounting, and legal work, in Iowa. Therefore, while one single fact or piece of evidence might not be persuasive, based on all of the evidence considered together, the undersigned finds that Coralville, Iowa is the "nerve center" of Corvida. Thus, Corvida has satisfied its burden of establishing diversity jurisdiction in this case, and Pioneer's and Hussain's motion to remand should be denied.

## RECOMMENDATION

Based on the above, and on the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

    1.    Plaintiff's and Third-Party Defendant's Motion to Remand or, Alternatively, to Dismiss Counts VI and VII of Defendant's Counterclaim and Third-Party Complaint (Doc. No. 10) be **DENIED** with respect to the motion to remand, and **DENIED AS MOOT** with respect to the motion to dismiss.

Date: August 13, 2018

                                        *s/ Becky R. Thorson*
                                        BECKY R. THORSON
                                        United States Magistrate Judge

### NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under D. Minn. Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report by **August 27, 2018**. A party may respond to those objections within **fourteen days** after service thereof. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in D. Minn. LR 72.2(c).

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within **ten days** of receipt of the Report.